1

2

3

4

5

6

7

8         **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    GREGORY JONES,                          No.  2:19-CV-1971-TLN-DMC-P

12                    Plaintiff,

13         v.                                 <u>ORDER</u>

14    INDERPAL BAL, et al.,                   and

15                    Defendants.             <u>FINDINGS AND RECOMMENDATIONS</u>

16

17         Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for summary judgment, ECF

19    No. 79.  Plaintiff has filed opposition briefs, ECF Nos. 83, 86, 87, and 91.  Defendants have filed

20    a reply, ECF No. 84.  Also before the Court are Defendants' evidentiary objections and motions

21    to strike, ECF Nos. 85, 88, and 92.

22         The Federal Rules of Civil Procedure provide for summary judgment or summary

23    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

24    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

25    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

26    standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

27    56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

28    the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

1   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

2   moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P.
> 56(c)(1).

8          If the moving party meets its initial responsibility, the burden then shifts to the

9   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11   establish the existence of this factual dispute, the opposing party may not rely upon the

12   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13   form of affidavits, and/or admissible discovery material, in support of its contention that the

14   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

15   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

16   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

17   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

18   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

20   (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

21   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

22   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

23   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

24   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

25   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

26   / / /

27   / / /

28   / / /

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

# I.  BACKGROUND

### A.    Plaintiff's Allegations

This action proceeds on Plaintiff's second amended complaint.  See ECF No. 23. The complaint details a delayed response to tuberculosis at Mule Creek State Prison (MCSP). See id.  Plaintiff named the following as defendants: (1) Dr. Inderpal Bal, Chief Medical Officer at MCSP; (2) Dr. Wesley Vaughn, Physician at MCSP; (3) Dr. Christopher Smith, Physician at MCSP; (4) Dr. Sam Wong, Physician at MCSP; (5) Kimberly Mashad, Executive Nurse at MCSP; (6) Julie Shattuck, Nurse Instructor at MCSP; (7) Bryan Leonard, Registered Nurse at MCSP; (8) Sierra Roberts, Public Health Nurse at MCSP; (9) Joe Lizzaraga, former Warden of MCSP; (10) Traci Patterson, Chief Executive Officer of Health Care Services at MCSP; (11) Patrick Covello, current Warden of MCSP; (12) J. Vila, Appeals Examiner at the California Department of Corrections and Rehabilitation (CDCR) Office of Appeals; (13) M. Martinez, Health Care Appeals Nurse at MCSP; (14) F. Vasquez, Associate Warden at MCSP; and (15) J. Quiring, Lieutenant Custody Staff Interviewer at MCSP; and (16) Omari, Registered Nurse at MCSP.  See ECF No. 23 at 1-4.  Plaintiff asserts three claims for relief.

1          Claim I – Threat to Safety and Failure to Protect

2          Plaintiff states that he was housed in cell #103 at MCSP and inmate Ralph Morales

3    was housed in next door in cell #104.  See id. at 5.  According to Plaintiff, it was discovered that

4    inmate Morales was positive with tuberculosis (TB).  See id.  Plaintiff states that if a proper

5    intake for inmate Morales had been conducted, the infection would have quickly been discovered.

6    See id.  Instead, Morales was allowed to "intermingle" with the rest of the prison population.  Id.

7    Plaintiff immediately began requesting to be tested as soon as he learned that inmate Morales had

8    been infected.  See id.

9          Plaintiff claims that MCSP medical staff failed to take appropriate actions under

10   their duty to protect the health and safety of inmates from infectious disease.  See id.  Plaintiff

11   asserts Defendant Bal is liable as the chief medical executive at MCSP for not training medical

12   staff.  See id.  Additionally, Plaintiff contends that Defendants Vaughn, Smith, Wong, Mashad,

13   Leonard, Roberts, Patterson, Lizzaraga, Vasquez, Patrick, Cavello, and Martinez are liable

14   because they failed to follow procedures relating to infectious disease in the prison.  See id. at 6-

15   7.  Upon discovering the presence of tuberculosis, Plaintiff immediately began requesting to be

16   tested for tuberculosis because his immune system was compromised by coccidiomycosis (Valley

17   Fever).  See id. at 7.  According to Plaintiff, Defendants put Plaintiff's health and safety in

18   danger, as the medical department had actual knowledge that inmate Ralph Morales had

19   tuberculosis and disregarded the risks.  See id.  Defendants Bal, Roberts, and Patterson were

20   immediately contacted to initiate the tuberculosis contact team investigation.  See id. at 7.

21         Plaintiff states that Defendants Bal, Vaughn, Smith, Wong, Mashad, Shattuck,

22   Leonard, Roberts, Patterson, and Martinez failed to follow the policy for quarantining in cases of

23   tuberculosis exposure.  See id. at 8.  According to Plaintiff, all named defendants disregarded a

24   risk that was obvious.  See id. at 9.  Defendants possessed actual knowledge of the impending

25   harm and failed to train and follow CDCR protocol for tuberculosis.  See id.  Plaintiff claims this

26   conduct caused Plaintiff to suffer extreme levels of anxiety, mental anguish, and emotional

27   injuries that were tortuous at times.  See id. at 10.

28   / / /

4

1

<u>Claim II – Deliberate Indifference to Medical Needs</u>

2        Plaintiff claims that after learning that an inmate housed in the cell next to his had

3 contracted TB, Plaintiff became fearful that his own health was at risk and immediately requested

4 to be tested for tuberculosis. <u>See id.</u> at 11.  Plaintiff has a compromised immune system, and the

5 chance of tuberculosis exposure can be fatal.  <u>See id.</u> at 12. According to Plaintiff, when he had

6 not been called for a TB test after a week, he submitted another request to be tested.  <u>See id.</u>

7 Plaintiff claims that he did not receive a response to his second request either.  <u>See id.</u>  Plaintiff

8 states that his subsequent requests were also ignored.  <u>See id.</u>  Plaintiff spoke with Defendant

9 Omari about the unanswered requests, Defendant Omari informed Plaintiff that there were no

10 records of any of Plaintiff's medical requests to be tested for tuberculosis.  <u>See id.</u> at 13.

11 Subsequently, Defendant Omari filled out a request form for Plaintiff to be tested for tuberculosis

12 on December 20, 2018. Plaintiff was later tested for TB on January 29, 2019 – nearly eight weeks

13 after Plaintiff's initial request for testing.  <u>See id.</u>  Plaintiff claims that the delay in testing and

14 Defendants' recklessness and failure to follow CDCR procedure in preventing the spread of an

15 infectious disease amounts to deliberate indifference to his health and safety.  <u>See id.</u> at 16.

16

<u>Claim III – Conspiracy to Withhold Medical Care</u>

17        Plaint alleges that Defendants obstructed Plaintiff from prosecuting his

18 administrative remedies and civil actions against Defendants for inadequate medical care and

19 deliberate indifference to Plaintiff's medical needs.  <u>See id.</u> at 17.  Plaintiff asked for the

20 healthcare service request forms that he submitted when seeking to be tested for tuberculosis;

21 however, Defendant Omari informed Plaintiff that the requested records did not exist.  <u>See id.</u>

22 Plaintiff states he knows this to be untrue because Plaintiff has the copies of the forms he

23 submitted.  <u>See id.</u>  Plaintiff claims "this indicates that several medical staff personnel are acting

24 in collusion to prevent Plaintiff. . .from [] presenting the claims I appealed."  <u>Id.</u> at 18. Plaintiff

25 asserts that his health and safety were put at risk and Defendants failed to protect Plaintiff from

26 exposure to tuberculosis. In turn, this failure caused Plaintiff extreme anxiety and mental stress.

27 <u>See id.</u> at 20.

28 / / /

1          **B.      Procedural History**

2                   The operative second amended complaint was filed on September 22, 2021.  See

3      ECF No. 23.  On January 7, 2022, the Court determined that the second amended complaint was

4      appropriate for service.  See ECF No. 26.  Defendants filed their answer to the second amended

5      complaint on July 14, 2022.  See ECF No. 49.  On March 28, 2023, the District Judge granted

6      Defendant Lizzaraga's unopposed motion to dismiss, and Defendant Lizzaraga was dismissed

7      form the action.  See ECF No. 65.  On May 23, 2023, the Court issued a discovery and scheduling

8      order for this case, with discovery due to be completed by January 8, 2024, and dispositive

9      motions due 120 days thereafter.  See ECF No. 68.  Defendants timely filed the pending motion

10     for summary judgment on March 8, 2024.  See ECF No. 79.

11

12                          **II.  THE PARTIES' EVIDENCE**

13        **A.      Defendants' Motion**

14                 Defendants' motion for summary judgment is supported by points and authorities,

15     ECF No. 79-1, a separate statement of undisputed facts, ECF No. 79-2, the declaration of

16     Defendant Sierra Robert (erroneously sued as "Roberts") and attached Exhibits A through BB,

17     ECF No. 79-4, and the declaration of defense counsel Namrata Kotwani, Esq., and attached

18     Exhibits A through I, ECF No. 79-3.

19                 In Defendants' statement of undisputed facts, Defendants first outline general facts

20     related to TB and quarantine procedures.  See ECF No. 79-2, pgs. 2-3, ¶¶ 1-19.  Next, Defendants

21     outline facts related to identification of an "Index Case" of TB at MCSP in December 2018.  See

22     id. at 3-9, ¶¶ 20-71.

23                 Defendants then outline the following facts related to Plaintiff's TB screening and

24     testing:

25                         72.      Jones's medical record shows that a nurse screened Jones
                   for symptoms of TB on December 1, 2018, the day after MCSP was
26                 notified of the Index Case's diagnosis and he denied any symptoms.
                   Robert Decl. ¶ 47, Ex. I, at OAG_00050.

27

28

73.     Jones's medical record shows that he received his annual TB evaluation on March 22, 2018. Robert Decl. ¶ 44, Ex. H, at OAG_00049.

74.     Every patient housed in a CDCR facility must receive this annual TB evaluation as part of a Tuberculosis Surveillance Program set forth in Health Care Department Operations Manual section 3.8.7(c)(3)(A).  Robert Decl. ¶ 44.

75.     Jones denied all symptoms of TB during his annual evaluation. Robert Decl. ¶ 44, Ex. H, at OAG_00049.

76.     Public Health Nurse Robert reviewed housing records and determined that Jones and the Index Case were housed in adjacent cells #103 and #104 respectively from August 4-31, 2018. Robert Decl. ¶ 45; Kotwani Decl., Ex. F, at OAG_00112-13.

77.     On September 1, 2018, the Index Case was transferred to cell # 121, while Jones was housed in a non-adjacent cell #103 until March 15, 2019. Robert Decl. ¶ 45; Kotwani Decl., Ex. F, at OAG_00112-13.

78.     Public Health Nurse Robert placed Jones in the cohort of inmates in the left half of the housing unit in the contact tracing investigation (also referred to as the Expanded Housing Cohort). Robert Decl. ¶ 46.

79.     This cohort was to be assessed in Phase II of the contact tracing investigation. Robert Decl. ¶ 46.

80.     On December 20, 2018, Michelle Martinez, a healthcare appeals nurse, logged a grievance in Jones's medical record concerning TB testing. Robert Decl. ¶ 48, Ex. J, at OAG_00051.

81.     Nurse Martinez noted that no request for TB testing could be found in the record for the past 90 days and submitted a Form 7362 requesting TB testing on Jones's behalf. Robert Decl. ¶ 48, Ex. J, at OAG_00051.

82.     Jones submitted another Form 7362 requesting TB testing on December 21, 2018, which was prepared by Nurse Omari. Robert Decl. ¶ 49, Ex. K, at OAG_00052; Sec. Am. Compl. (SAC), at 13.

83.     Although Jones provided purported copies of his requests for TB testing dated December 5, 7, and 15 with his administrative appeals, none of these were found in his medical record or otherwise confirmed as received by MCSP. Robert Decl. ¶ 48, Ex. J, at OAG_00051; Kotwani Decl., Ex. D, at OAG_00088-90; Ex. H OAG_00127-129; Ex. I

OAG_00144-146.

84.     A nurse followed up with Jones on December 24, 2018. Robert Decl. ¶ 50, Ex. L, at OAG_00053.

85.     That Nurse conducted a TB screening and Jones denied all symptoms of TB. Robert Decl. ¶ 50, Ex. L, at OAG_00053.

86.     Jones denied all symptoms of TB. Robert Decl. ¶ 50, Ex. L, at OAG_00053.

87.     Nevertheless, the nurse referred the case to a physician who ordered a test to definitively rule out TB.  Robert Decl. ¶ 50.

88.     On December 28, 2018, Jones received a QuantiFERON-TB Gold Plus test and tested negative for TB. Robert Decl. ¶ 51, Ex. M, at OAG_00054-55.

89.     On January 9, 2019, Jones received his annual TB screening and evaluation. Robert Decl. ¶ 52, Ex. N, at OAG_00056.

90.     Jones denied all symptoms of TB. Robert Decl. ¶ 52, Ex. N, at OAG_00056.

91.     On January 24, 2019, a nurse again performed a TB screening and evaluation of Jones as part of the Phase II of the contact tracing investigation. Robert Decl. ¶ 53, Ex. O, at OAG_00057-58.

92.     Jones denied all symptoms of TB. Robert Decl. ¶ 53, Ex. O, at OAG_00057-58.

93.     On January 28, 2019, Jones received another QuantiFERON-TB Gold Plus test and tested negative for TB. Robert Decl. ¶ 54, Ex. P, at OAG_00059-60.

94.     On February 8, 2019, Nurse Martinez interviewed Jones regarding his January 15, 2019, healthcare grievance. Robert Decl. ¶ 55, Ex. Q, at OAG_00061.

95.     Despite the fact that Jones had been repeatedly screened and tested for TB, Jones again requested testing for TB and coccidioidomycosis. Robert Decl. ¶ 55, Ex. Q, at OAG_00061.

96.     Jones's medical record shows that he received yet another QuantiFERON-TB Gold Plus test on July 5, 2019, and tested negative for TB. Robert Decl. ¶ 56, Ex. R, at OAG_00062-63.

/ / /

97.     Jones was never diagnosed with active or latent TB after his exposure to the Index Case. Robert Decl. ¶ 57.

ECF No. 79-2, pgs. 9-12.

Defendants next outline facts related to Plaintiff's negative testing for Valley Fever (coccidioidomycosis).  See id. at 12-13, ¶¶ 98-116.  Next, Defendants outline facts related to Plaintiff's treatment for pneumonia in July 2019 and negative TB tests at the time.  See id. at 13-14, ¶¶ 117-24.  Finally, Defendants outline facts related to Plaintiff's inmate grievances and exhaustion of administrative remedies prior to filing suit in 2019.  See id. at 14-20, ¶¶ 125-78.

**B.      Plaintiff's Opposition**

Plaintiff's opposition is supported by a statement in response to Defendants' separate statement of undisputed facts, ECF No. 83 at 3-67, points and authorities to oppose summary judgment, ECF No. 83 at 79-86, the declaration of Plaintiff in support of Plaintiff's opposition to Defendants motion for summary judgment, ECF No. 83 at 87-90, the affidavit of inmate Ralph Morales, ECF No. 83 at 149-151, the affidavit and tuberculosis test of inmate Jose Soto, ECF No. 83 at 91- 99, and attached exhibits, ECF No. 83 at 100-440. Plaintiff also filed a second, third, and fourth memoranda of points and authorities in opposition to Defendants' motion, ECF Nos. 86, 87, and 91.

In Plaintiff's statement in response to Defendants' statement of undisputed facts, Plaintiff primarily admits to the undisputed facts submitted by Defendants. Plaintiff largely relies on Defendants' purported lack of responses to Plaintiff's interrogatories, request for admissions, or requests for production. Throughout Plaintiff's statement of disputed facts, Plaintiff directs the Court to see attached exhibits to state what Plaintiff disputes. Plaintiff does not, however, explain further why a particular fact is disputed.

Plaintiff disputes the following regarding the spread of tuberculosis: (1) how easily a person can contract tuberculosis by being in close contact with a person already infected with tuberculosis, ECF No. 83 at 4-5, (2) the results of a tuberculosis test for a person with latent tuberculosis rather than active tuberculosis, ECF No. 83 at 10-11, (3) whether quarantining those who do not have active tuberculosis infection is an appropriate disease control measure, ECF No.

1   83 at 13.

2          Plaintiff additionally disputes the following facts related to MCSP's contact

3   tracing investigation: (1) the steps Defendant Roberts followed under CCHCS's procedures and

4   policies, ECF No. 83 at 14, (2) that Defendant Roberts did not identify Plaintiff as a close contact

5   of the Index Case, ECF No. 83 at 16-19, (3) those who were reporting symptoms were placed in

6   surgical masks and separated from other inmates, ECF No. 83 at 28-29, and (4) which defendants

7   were involved in the tuberculosis contact tracing investigation, ECF No. 83 at 35-46.

8          Finally, Plaintiff attaches multiple exhibits. The exhibits mainly consist of the

9   parties' discovery requests and responses thereto.  See id. at 160-269. Plaintiff further provides

10  multiple attachments regarding tuberculosis, including MCSP's contact tracing investigation

11  methods. See id. at 281-320. The remaining exhibits include Plaintiff's healthcare service

12  requests, healthcare grievances, appeals, MCSP's responses, and additional medical records.  See

13  id. at 321-440.

14         Defendants object to and move to strike portions of the declarations of inmates

15  Morales and Soto.  See ECF No. 85.  Defendants also move to strike Plaintiff's second third, and

16  fourth opposition memoranda.  See ECF Nos. 88 and 92.  As these additional memoranda were

17  not previously authorized by the Court, Defendants' motions to strike will be granted.

18

19                              **III. DISUCSSION**

20         In their motion for summary judgment, Defendants argue: (1) Plaintiff's claims fail

21  on the merits because MCSP promptly executed a robust TB contact tracing protocol, provided

22  Plaintiff appropriate care and testing, and promptly responded to Plaintiff's requests for health care;

23  (2) to the extent Plaintiff is seeking damages based on delayed treatment, Plaintiff cannot prevail

24  because he has not established that he suffered actual damage as a result of any delay; (3) to the

25  extent Plaintiff is seeking damages for mental and/or emotional injury, Plaintiff cannot prevail

26  because he has not established that he suffered a physical injury; (4) Plaintiff cannot prevail because

27  he fails to establish a causal connection between any named defendant and the alleged

28  constitutional violations; (5) Plaintiff cannot prevail because he failed to adequately exhaust

                                    10

1   administrative remedies prior to filing suit; and (6) Plaintiff's claims against Defendants in their

2   official capacities are barred by the Eleventh Amendment.  See ECF No. 79-1.

3       **A.**   **Exhaustion**

4           Prisoners seeking relief under § 1983 must exhaust all available administrative

5   remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

6   regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

7   Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

8   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

9   while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

10  Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

11  held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

12  because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

13  defendants; (2) an individual named as a defendant does not necessarily need to be named in the

14  grievance process for exhaustion to be considered adequate because the applicable procedural

15  rules that a prisoner must follow are defined by the particular grievance process, not by the

16  PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

17  all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

18  instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

19  burden of showing that the grievance process was not available, for example because it was

20  thwarted, prolonged, or inadequate.  See id.

21          The Supreme Court held in Woodford v. Ngo that, in order to exhaust

22  administrative remedies, the prisoner must comply with all of the prison system's procedural

23  rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

24  exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

25  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

26  which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

27  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

28  quantity of prisoner suits "because some prisoners are successful in the administrative process,

11

1   and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

2   When reviewing exhaustion under California prison regulations which have since been amended,

3   the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

4   adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557

5   F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

6   (reviewing exhaustion under prior California regulations).

7           Until June 1, 2020, when regulations relating to inmate grievances were amended,

8   a prison inmate in California satisfied the administrative exhaustion requirement by following the

9   procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.

10  Inmates "may appeal any policy, decision, action, condition, or omission by the department or its

11  staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her

12  health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a); see also Munoz v. Cal. Dep't of

13  Corrs., 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). Under the pre-2020 regulations, the

14  inmate must submit their appeal on the proper form and is required to identify the staff member(s)

15  involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, §

16  3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See

17  Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which

18  is also referred to as the director's level, is not appealable and concludes a prisoner's

19  departmental administrative remedy. See id. Departmental appeals coordinators may reject a

20  prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

21  appeals, use of improper language, failure to attach supporting documents, and failure to follow

22  proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate

23  is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15,

24  §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate

25  clearly identified and signed by each member of the group. See Cal. Code Regs. tit 15, §

26  3084.2(h).

27  / / /

28  / / /

Defendants argue that, while Plaintiff filed three inmate grievances and/or inmate appeals concerning potential exposure to TB, "none of those implicate Defendants, or elucidate Defendants' nexus to the claims alleged in the SAC [second amended complaint]." ECF No. 79-1, pg. 39. The Court agrees.

The undisputed evidence shows that Plaintiff submitted three grievances connected to his healthcare at MCSP. See ECF No. 79-2, pg. 14, ¶ 125 (citing Kotwani Decl., Ex. B, Ex. C, and Ex. G). Exhibit G to the Kotwani declaration is Plaintiff's grievance history reflecting that Plaintiff in fact submitted three grievances and/or appeals related to healthcare at MCSP as follows: (1) MSCP-HC-19000078, submitted on February 6, 2019; (2) MSCP-HC-18003134, submitted on December 20, 2018; and (3) MSCP-HC-17000521, submitted on November 15, 2017. See ECF No. 79-3, pg. 46. The events in this case are alleged to have occurred after December 1, 2018, which is the day after staff at MCSP was notified of the Index Case. See ECF No. 23 (second amended complaint). Thus, the grievance submitted prior to this date in November 2017 (MSCP-HC-17000521) could not have served to exhaust Plaintiff's claims.

The undisputed evidence also shows that Plaintiff filed one inmate appeal related to healthcare at MCSP. See ECF No. 79-2, pg. 18, ¶ 160 (citing Kotwani Decl., Ex. E). Exhibit E to the Kotwani declaration consists of documents related to inmate appeal no. MCSP-19-00785. See ECF No. 79-3, pgs. 23-41. This appeal was submitted by Plaintiff on April 15, 2019. See id. at 25.

The two relevant grievances and one relevant inmate appeal, submitted in December 2018, February 2019, and April 2019, are discussed below.

1.   MCSP-HC-18003134

As to this grievance, Defendants argue:

> *First,* Jones filed a healthcare grievance (MCSP-HC-18003134) on December 19, 2018, stating that he had been exposed to the Index Case. (DUF 126.) Jones's grievance did not name any defendants and did not describe how their specific acts or omissions had an adverse impact on him. *See Johnson v. Cermeno,* No. 19-CV-02345-SI (PR), 2021 WL 2333858, at *8 (N.D. Cal. June 8, 2021) (finding that "health-care appeal was far too nonspecific to allow investigation of individual staff member's alleged wrongdoing" and a "generic statement [regarding inadequacy of medical care] . . . far short of naming the involved staff members and describing their involvement" did not provide the level of detail required by the prison's regulations and did not properly exhaust administrative

13

1   remedies against defendants).

2         When appealing the initial response to this health care grievance, Jones improperly added an allegation that Dr. Bal, Dr. Smith, Dr. Vaughn, Public Health Nurse Robert, MCSP clinical staff, headquarters

3   supervisors, the Amador County Public Health Department, and Warden Lizarraga acted with deliberate indifference and disregarded a substantial

4   risk of serious harm and inflicted pain, stress, and anguish due to improper quarantining. (DUF 133.) These allegations are generic and did not guide

5   prison officials on how Jones's issues could be addressed. In any event, administrative remedies are *not* exhausted as to any new issue or person

6   later named that was not included in the originally submitted appeal. *See* Cal. Code Regs. tit. 15, § 3084.1(b); *Martin v. Basnett*, Case No. 17-cv-

7   06263-YGR (PR), 11 (N.D. Cal. Aug. 5, 2020) (in order to exhaust any claims against defendants not originally named in inmate's appeal, he is

8   "required to submit a *separate* appeal raising any claims" about those defendants' involvement"). Consequently, this grievance did not exhaust

9   administrative remedies for Jones's claims against Defendants.

10   ECF No. 79-1, pgs. 39-40.

11       Documents related to this grievance have been submitted as Exhibit H to the

12   Kotwani declaration.  <u>See</u> ECF No. 79-3, pgs. 48-65.  As Defendants correctly observe, no named

13   defendant is mentioned in this grievance.  <u>See id.</u>  Thus, the grievance also does not describe how

14   any named defendant acted or failed to act to cause injury to Plaintiff.  <u>See id.</u>  While Plaintiff listed

15   various named defendants in his appeal of the prison's initial response to this grievance, this failed

16   to cure the defect in the original grievance.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.1(b).  On this

17   evidence, which is not in dispute, the Court finds that grievance MCSP-HC-18003134 failed to

18   exhaust administrative remedies.

19           2.   <u>MCSP-HC-19000078</u>

20       As to this grievance, Defendants argue:

21       *Second*, Jones filed another healthcare grievance (MCSP-HC-19000078) [footnote omitted], requesting to be tested for TB and valley

22   fever. (DUF 141.) Jones stated that he had been exposed to the Index Case for a year, and started experiencing a cough, cold, and loss of appetite

23   during the week of December 5, 2018. (DUF 144.) The grievance, however, did not name any Defendants; mention any misconduct of any

24   prison official that led to the Index Case's misdiagnosis or his potential exposure to TB; or mention any specific policies that were ignored during

25   the TB contact tracing investigation. (*See* DUF 141, 144-46.) Again, this grievance failed to exhaust administrative remedies for Jones's claims

26   against Defendants.

27   ECF No. 79-1, pg. 40.

28   / / /

14

1            Documents related to this grievance have been provided as Exhibit I to the Kotwani

2 declaration.  See ECF No. 79-3, pgs. 67-85.  As with MCSP-HC-18003134, discussed above,

3 MCSP-HC-19000078 also did not exhaust administrative remedies because no named defendant is

4 mentioned in the grievance.

5                 3.     MSCP-19-00785

6            As to Plaintiff's healthcare appeal submitted in April 2019, Defendants contend:

7                 *Third*, Jones filed an inmate appeal on April 15, 2019 (MCSP-A-
10-00785), alleging that Warden Lizarraga, MCSP custody staff,
8                 supervisors, and two unidentified headquarters personnel did not follow
appropriate protocols to prevent the spread of TB. (DUF 160.) Jones
9                 alleged that he was housed next to an inmate with TB and that he wished
to receive $1.5 million for negligence, reckless disregard for his health,
10                 mental anguish and distress. (DUF 165.) Again, except for Warden
Lizarraga, who has already been dismissed from the case, the grievance
11                 does not implicate or name any Defendant that he has sued in this action.
Nor did the grievance state the protocols that were not followed, except
12                 the implementation of quarantine—even though quarantine of
asymptomatic individuals is not an applicable policy under the
13                 circumstances and thus, no official was required to implement it.
Moreover, the grievance does not suggest that any of the named
14                 defendants was aware of Jones's issues with contact investigation and still
failed to correct it. Because this inmate appeal did not apprise Defendants
15                 of the "nature of the wrong for which redress is sought," Jones did not
exhaust his appeals with respect to Defendants. *See Gray v. Smith*, No. C
16                 13-1229 WHA (PR), 2015 WL 875482, at *2 (N.D. Cal. Feb. 27, 2015);
*Robinson v. Cryer*, 1:20-cv-00980-JLT-HBK (PC), 11 (E.D. Cal. Apr. 19,
17                 2023).

18            ECF No. 79-1, pgs. 40-41.

19            Documents relating to this appeal are provided to the Court as Exhibit E to the

20 Kotwani declaration.  See ECF No. 79-3, pgs. 23-41.  As with Plaintiff two healthcare grievances,

21 this inmate appeal did not list any named defendant, except for Lizzaraga who has been dismissed.

22 Thus, as to the remaining defendants, MSCP-19-00785 also did not exhaust administrative

23 remedies.

24      **B.**      **Official Capacity**

25            The Eleventh Amendment bars actions seeking damages from state officials acting

26 in their official capacities.  See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v.

27 Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).  The Eleventh Amendment does not,

28 however, bar suits against state officials acting in their personal capacities.  See id.  Under the

doctrine of <u>Ex Parte Young</u>, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities.  <u>See</u> <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1025 (9th Cir. 1997).  The Eleventh Amendment also does not bar suits against cities and counties.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.54 (1978).

Defendants argue:

> Jones is suing Defendants in their individual and official capacities. (SAC at 2-3.) Because the Eleventh Amendment prohibits litigants from bringing suits for money damages against state officials acting in their official capacity, Defendants are entitled to immunity on Jones's official capacity damages claims. *Eaglesmith v. Ward*, 73 F.3d 857, 860-61 (9th Cir. 1995).

ECF No. 79-1, pg. 41.

In the second amended complaint, Plaintiff sues Defendants in both their official and individual capacities and seeks only damages for mental and/or emotional injuries.  <u>See</u> ECF No. 23, pgs. 2-4, 21.  The Court agrees with Defendants that Plaintiff may not proceed on his damages claims against Defendants in their official capacities.  <u>See</u> <u>Eaglesmith</u>, 73 F.3d at 859.  The action may proceed, however, as against Defendants in their individual capacities.  <u>See</u> <u>Cornel v. Hawaii</u>, 37 F.4th 527, 531 (9th Cir. 2022) (stating that "plaintiffs may seek damages against a state official in his personal capacity"); <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991); <u>Mitchell v. Washington</u>, 818 F.3d 436, 442 (9th Cir. 2016) (explaining the Eleventh Amendment does not bar claims for damages against state officials in their personal capacities).

**C.**    **<u>Damages</u>**

Defendants raise two arguments related to Plaintiff's ability to recover damages in this case.  First, Defendants contend that, to the extent Plaintiff is seeking damages based on alleged delay in medical treatment, Plaintiff cannot recover because the undisputed facts show that Plaintiff did not suffer any actual harm resulting from the delay.  <u>See</u> ECF No. 79-1, pgs. 33-34.  Second, Defendants maintain that, because Plaintiff is seeking damages for mental and/or emotional injuries only, he cannot recover because the undisputed facts show that Plaintiff did not suffer a physical injury.  <u>See</u> <u>id.</u> at 34.  For the reasons discussed below, the Court finds both arguments well-taken.

16

1             1.      Damages for Delay in Medical Care

2             In this case, Plaintiff presents Eighth Amendment claims based on deliberate

3   indifference to the safety risk posed by the Index Case and failure to quarantine and/or test Plaintiff,

4   Eighth Amendment claims based on delay in testing, as well as claims of a conspiracy to withhold

5   medical care from Plaintiff.  See ECF No. 23 (second amended complaint).  Where delay is

6   alleged, the prisoner must demonstrate that the delay led to further injury.  See McGuckin v.

7   Smith, 974 F.2d 1050, 1060 (9th Cir. 1992).  Defendants argue: "Here, any alleged delays did not

8   result in harm to Jones – he did not develop any latent or active TB infection arising from any

9   alleged failure to follow applicable policies or suffer any deterioration in his condition due to

10  delayed testing."  ECF No. 79-1, pg. 34.

11            Defendants' argument is persuasive.  Here, the undisputed evidence related to

12  Plaintiff's TB screening and testing, which is outlined in detail above, shows that Plaintiff was

13  tested and/or screened for TB numerous times after potential exposure to the Index Case and that,

14  every time, Plaintiff denied any symptoms.  The undisputed evidence also shows that Plaintiff

15  never actually contracted TB or suffered a deterioration in his health due to any delay in TB

16  testing.  While Plaintiff contends in his first opposition brief that he sustained extreme anxiety and

17  mental anguish due to Defendants' alleged delay in testing, see ECF No. 83, pg. 116, such claims

18  do not raise a triable issue of fact on the injury requirement, see White v. Kasawa, 2010 WL

19  986820, at *11 (N.D. Cal. 2010).  Because there is no evidence in this case that Plaintiff suffered

20  "significant harm" resulting from delay, Plaintiff cannot prevail to the extent his claims are based

21  on delay in TB testing.  Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002).

22            2.      Mental/Emotional Damages

23            The Prison Litigation Reform Act provides that "[n]o Federal civil action may be

24  brought by a prisoner confined in jail, prison, or other correctional facility, for mental and

25  emotional injury suffered while in custody, without a prior showing of physical injury."  42 U.S.C.

26  § 1997e(e).  Thus, before a prisoner can recover for damages in a civil rights action for emotional or

27  mental injuries, the prisoner must show a "physical injury that need not be significant but must be

28  more than de minimis."  Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).

                                              17

1    Defendants argue:

2         Here, Jones has alleged only emotional injuries in his operative
3    complaint – "seriously extreme level of anxiety," "mental anguish,"
     "emotional injuries," "emotional stress," "psychosocial stress," "pain and
     suffering," "fear for his life," and "emotional distress." Because he did not
4    allege – and cannot prove – any physical injury based on his claims, he
     cannot recover damages. (*See* SAC at 5, 10, 11, 21.). *See Jones v. Haga*,
5    2020 WL 5991618, at *6-7 (C.D. Cal. March 20, 2020) (plaintiff's claim
     for inadequate medical care barred by section 1997e(e) where only injury
6    alleged was "mental anguish-mental distress); *Wood v. Idaho Dep't of
     Corr.*, 391 F. Supp. 2d 852, 867 (D. Idaho 2005) (finding that prisoner's
7    Section 1983 deliberate indifference claim for "worry and distress"
     suffered during delay of scheduled hepatitis vaccinations is barred by
8    section 1997e(e) where prisoner did not contract hepatitis during the
     delay).

9    ECF No. 79-1, pg. 34.

10

11       A review of the second amended complaint reflects, as Defendants note, that

12   Plaintiff is seeking damages for mental and emotional injuries only.  *See* ECF No. 23, pgs. 5, 11, 21

13   (Plaintiff's statements of injuries).  Plaintiff does not allege any injuries other then mental and/or

14   emotional injuries.  *See* id.  As discussed above, Plaintiff cannot establish that he suffered any

15   physical injury related to TB, testing, screening, quarantining, or delay.  This case is akin to Wood

16   v. Idaho Dep't of Corr., where the court determined that a prisoner's claims for emotional distress

17   damages arising from delay in scheduled hepatitis vaccination was foreclosed by § 1997e(e) where

18   the prisoner did not contract hepatitis during the delay.  *See* 391 F. Supp. 2d at 867.  As in Wood,

19   Plaintiff complains of delay in TB testing and alleges mental and emotional damages as a result of

20   that delay, but Plaintiff never actually contracted TB.  Recovery in this action, which only seeks

21   damages for mental and emotional injuries, is foreclosed by § 1997e(e) because Plaintiff cannot

22   establish that he suffered a physical injury.

23       **D.    <u>Merits</u>**

24       Though the Court finds that Defendants are entitled to summary judgment on all

25   claims based on Plaintiff's failure to exhaust administrative remedies prior to filing suit as well as

26   Plaintiff's inability to establish a physical injury to support his claims for mental and emotional

27   damages, the Court nonetheless addresses Defendants' arguments related to the merits of Plaintiff's

28   Eighth Amendment deliberate indifference claims.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates' safety.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

1    Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

2    injury or illness, also gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

3    105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

4    health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other

5    grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if

6    the failure to treat a prisoner's condition could result in further significant injury or the ". . .

7    unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

8    1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)

9    (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors

10   indicating seriousness are: (1) whether a reasonable doctor would think that the condition is

11   worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities;

12   and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v.

13   Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

14   The requirement of deliberate indifference is less stringent in medical needs cases

15   than in other Eighth Amendment contexts because the responsibility to provide inmates with

16   medical care does not generally conflict with competing penological concerns.  See McGuckin,

17   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

18   decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

19   1989).  The complete denial of medical attention may constitute deliberate indifference.  See

20   Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

21   treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

22   Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

23   that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

24   Negligence in diagnosing or treating a medical condition does not, however, give

25   rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

26   difference of opinion between the prisoner and medical providers concerning the appropriate

27   course of treatment does not generally give rise to an Eighth Amendment claim.  See Jackson v.

28   McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, a claim involving alternate courses of

20

treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

As to the merits of Plaintiff's Eighth Amendment claims, Defendants argue:

*First*, Jones brings a threat to safety and failure to protect claim, alleging that had Defendants undertaken "proper intake procedures," the Index Case would have been quickly discovered, and that they subsequently failed to observe CDCR's infectious disease protocols. (*Id.* at 5; 6-7.) *Second*, Jones brings a deliberate indifference claim, alleging that Defendants ignored his requested to be tested for TB, even though he is allegedly immunocompromised, delayed testing, and failed to follow CDCR policies, implement quarantine, and adequately train personnel. (*Id.* at 11; 13; 15.) *Third*, Jones alleges that Defendants somehow colluded to ignore his requests for medical care and obstructed his grievances and this lawsuit. (*Id.* at 17.)

Jones's claims are easily refuted—there is no evidence that the Index Case could have been diagnosed earlier or exhibited obvious symptoms of TB infection. Even Jones acknowledges that medical personnel at a community hospital were treating the Index Case for lung cancer, before a biopsy revealed TB. (DUF 170.) Further, MCSP immediately instituted a thorough contact tracing process, scrupulously complied with CDCR policies and guidance offered by state authorities. Indeed, Jones's own medical record establishes that he was screened for TB the day after MCSP was notified of the Index Case's infection. (DUF 72.) Jones received multiple negative TB screenings and tests in 2018-19, as well as additional reassurance in multiple clinical encounters that he was never infected. (DUF 88, 93, 96, 119, 122, 136.) Finally, Jones's requests for TB testing and appeals were promptly addressed and investigated (*see* DUF 80, 82, 106, 108), negating any inference of deliberate indifference or conspiracy to withhold care or obstruct his right to redress.

Given the uncontroverted evidence of MCSP's assiduous contact tracing investigation; prompt and appropriate provision of services to Jones; and timely handling of his grievances, this Court should grant summary judgment to Defendants as a matter of law.

ECF No. 79-1, pg. 25.

Defendants' arguments are persuasive.  The undisputed evidence in this case shows that MCSP had a robust TB contact tracing protocol in place at the time of the events alleged.  See ECF No. 79-2, pgs. 3-9, ¶¶ 20-71 (Defendants' statement of undisputed facts).  On March 22, 2018, Plaintiff received his annual TB testing, which every inmate must receive as part of the CDCR's Tuberculosis Surveillance Program.  See id. at pg. 9, ¶¶ 73 and 74.  At the time of his annual TB test, Plaintiff denied any symptoms of TB.  See id. at pg. 10, ¶ 75.

The undisputed evidence also shows that, between August 4 and August 31, 2018, the Index Case inmate was housed in cell #103 directly adjacent to Plaintiff's cell, #104.  See id. at pg. 10, ¶ 76.  On September 1, 2018, the Index Case inmate was transferred to cell #121 and Plaintiff remained in cell #104, which is non-adjacent.  See id. at pg. 10, ¶ 77.  On November 30, 2018, the Index Case was discovered by MCSP staff upon a positive TB diagnosis while the inmate was at an outside hospital for treatment for lung cancer.  See id. at pg. 3, ¶ 20.  The Index Case inmate was not returned to MCSP until December 21, 2018.  See id. at pg. 3, ¶ 22.  Upon learning of the Index Case on November 30, 2018, and even though that inmate was still at an outside hospital, on December 1, 2018, Plaintiff was screened for symptoms of TB and Plaintiff denied any symptoms at that time.  See id. at pg. 9, ¶ 72.

On December 20, 2018, healthcare appeals nurse Michelle Martinez logged Plaintiff's grievance concerning TB testing and submitted a form requesting that Plaintiff be tested for TB.  See id. at pg. 10, ¶¶ 80 and 81.  Plaintiff was screened for TB on December 24, 2018, at which time Plaintiff denied any TB symptoms.  See id. at pg. 11, ¶¶ 84-86.  On December 28, 2018, Plaintiff received a TB test and tested negative.  See id. at pg. 11, ¶ 88.  On January 9, 2019, Plaintiff received his annual TB screening and evaluation and again denied any TB symptoms.  See id. at pg. 11, ¶¶ 89 and 90.  On January 24, 2019, Plaintiff was again screened for TB as part of the contact tracing protocol implemented following discovery of the Index Case.  See id. at pg. 11, ¶ 91.  At that time, Plaintiff denied any TB symptoms.  See id. at pg. 11, ¶ 92.  Plaintiff was tested again for TB on January 28, 2019, and tested negative.  See id. at pg. 11, ¶ 93.

On February 8, 2019, Plaintiff was interviewed regarding his second grievance related to TB testing.  See id. at pg. 11, ¶ 94.  On July 5, 2019, Plaintiff was once again tested for TB and tested negative.  See id. at pg. 11, ¶ 96.  Plaintiff's medical records reflect that Plaintiff was never diagnosed with either active or latent TB after his exposure to the Index Case.  See id. at pgs. 11-12, ¶ 97.

/ / /

/ / /

/ / /

1       These facts, which are not disputed by any evidence provided by Plaintiff, show that

2   Plaintiff cannot establish any conspiracy to withhold medical care or thwart Plaintiff's grievances.

3   To the contrary, the evidence shows that Plaintiff was provided extensive medical care related to

4   TB following discovery of the Index Case, and even before as part of CDCR's annual TB

5   surveillance program.  The evidence also shows that Plaintiff's grievances related to TB were

6   responded to promptly and resulted in additional TB screening and testing.

7       The facts also show that Plaintiff cannot establish essential elements of his Eighth

8   Amendment medical care and safety claims.  Specifically, the evidence shows that prison officials

9   knew of the risks associated with TB and took robust actions to mitigate those risks and keep

10  Plaintiff safe from TB.  Thus, Plaintiff cannot prevail on his claim that Defendants were

11  deliberately indifferent to a safety risk posed by TB.  Likewise, after discovery of the Index Case,

12  Plaintiff was provided routine TB screening and testing, and at all times Plaintiff denied any TB

13  symptoms and Plaintiff never contracted TB.  Thus, Plaintiff cannot prevail on his claim that

14  Defendants were deliberately indifferent to Plaintiff's serious medical needs.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1.      It is ORDERED that Defendants' evidentiary objection and motion to strike declarations, ECF No. 85, is OVERRULED and DENIED as moot.

2.      It is ORDERED that Defendants' motions to strike unauthorized opposition memoranda, ECF Nos. 88 and 92, are GRANTED.

3.      It is ORDERED that Plaintiff's unauthorized filings at ECF Nos. 86, 87, and 91 are STRICKEN.

4.      It is RECOMMENDED that Defendants' motion for summary judgment, ECF No. 79, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 30, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE